[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a complaint filed by the plaintiff-wife on August 28, 1998 seeking a dissolution of a 28-year marriage on the basis of an irretrievable breakdown. The plaintiff is also asking for alimony, joint custody of a minor child, child support, and an equitable distribution of marital assets. On December 7, 1998, the defendant-husband filed an answer and a cross-complaint CT Page 4537 seeking a dissolution of the marriage, joint custody of the minor child, and a fair distribution of the marital assets.
A trial was held on March 23, 2000. Both parties were present and were represented by counsel. The parties stipulated to the following facts at the start of trial: (1) The value of the marital home in Ellington, Connecticut is $144,000(2) The current debt of the first mortgage on the marital home is $30,000(3) The current debt on the second mortgage on the marital home is $28,000(4) The value of the defendant's military National Guard pension is $30,000. The court takes judicial notice of the prior pendente lite proceedings in this case contained in the court file.
The court heard testimony from the plaintiff, the defendant, Walter Rudewicz, and Gloria Mancarella. From the testimony and evidence produced, and after carefully assessing the credibility of the witnesses, the court finds the following to have been proven.
The plaintiff, whose prior name was Deborah S. Francolini, and the defendant were intermarried on April 24, 1971 in Enfield, Connecticut. They resided continuously in the State of Connecticut for more than twelve months prior to the date of the complaint. Four children were born of this marriage with Amy Michelle Renals, who was born on July 29, 1983, being the only remaining minor child of the marriage. No state or public agency has contributed to the support of either party. The court finds that it has jurisdiction over the parties as well as the marriage.
The plaintiff, who is currently 48 years old, and apparently in good health, was nineteen years old when she married the defendant. She is a high school graduate and was employed as a file clerk with the Travelers Insurance Company at the time of the marriage. Upon the birth of their first child, approximately eighteen months into the marriage, the parties agreed that the plaintiff would leave work and devote her full time to being a housewife and mother. Consequently, over the next two decades, with the exception of a few part time jobs as a clerk and a school bus driver, the plaintiff contributed all of her time and effort to being a mother and homemaker. Three additional children were born to the couple during that time.
Approximately ten years ago the plaintiff obtained part time CT Page 4538 employment with the Journal Inquirer in Manchester, Connecticut. She continues to be employed by the Journal Inquirer and although she works approximately 35 hours per week and earns $9.50 per hour she is classified as a part time employee and receives no health benefits. Her average annual income over the past three years was $17,825.
The plaintiff was offered a full time 40 hour per week job with the Journal Inquirer about five years ago but declined the offer because she wanted the flexibility to care for her children and to be home for them after school. She testified that she is currently seeking a full time position with the Journal Inquirer. Her supervisor, Walter Rudewicz, testified that there is no opening for full time employment in her department at this time. The plaintiff has minimal marketable job skills. She is a data entry clerk but does not consider herself to be computer literate.
The plaintiff has devoted her entire adult life to this marriage and to raising the children of this marriage. Her 28-year contribution to the marriage was of substantial benefit to both the defendant as well as the children. Given the plaintiffs age, education, training and experience, she is unlikely to ever achieve the level of financial success and comfort that she might have achieved had she pursued a career and worked outside of the home throughout the marriage.
The defendant, who is 50 years old and in good health, was a 21-year-old high school graduate when he married the plaintiff. He is a civilian employee of the Connecticut Army National Guard and has been so employed for more than 30 years. He is also a 30-year member of the Connecticut National Guard with the rank of Sergeant First Class. The plaintiffs annual income from his full time job is approximately $48,500. Additionally, he earns approximately $4000 per year as a member of the National Guard. He has health benefits for himself and his wife and minor child through his employer.
The defendant testified that he first began to experience dissatisfaction with the marriage after the parties were married for about ten years. This continued throughout the balance of the marriage and on several occasions he expressed a desire to move out of the marital home. He testified that he did not do so for two reasons: first, he did not know how to go about making such a change and second, some of the children were in college and he CT Page 4539 could not afford to move out on his own.
About ten years ago the plaintiff met Gloria Mancarella. By 1995 that acquaintanceship had developed into a romantic, sexual, relationship and, on August 1, 1998, the defendant left his marital home and began to reside with Ms. Mancarella. Both the defendant and Mancarella acknowledged their sexual relationship and testified that they continue to cohabit in Mancarella's house as of the date of trial. It is noted that the defendant's only expense for residing with Ms. Mancarella is a contribution of $100 per week toward the utility bills for the house.
The parties own a single family house in Ellington, Connecticut. They have stipulated that the market value of the property is $144,000 and that the property is encumbered with two mortgages totaling $58,000. Additionally, the parties own several motor vehicles including a 1994 Nissan Altima, 1988 Jeep Comanche, 1958 Mercedes 280, a 1999 Ford Escort, and a motorcycle. As of the date of trial the total funds reported in their checking and savings account was only $402. The only other assets are the wife's 401(k) account valued at $2500 and the husbands employment and National Guard Pensions.
The court takes note that on October 26, 1998 the plaintiff filed a financial affidavit with the court relating to her pendente lite motion for alimony and child support. That affidavit listed total liabilities in the amount of $7,243, including a debt of $5,990 on an AFBA VISA account. On March 23, 2000, the defendant submitted a financial affidavit showing liabilities totaling $17,718.02. That financial affidavit does not include the AFBA VISA account as that debt has been assumed by the defendant and is shown on his March 23, 2000 financial affidavit. The plaintiffs reported liabilities have increased by approximately $16,400 in seventeen months.
With the exception of $4000 credit card charge for attorney fees, the plaintiffs vague explanation concerning the source and amounts of these debts is less than satisfying. She testified that she does not have, nor does she keep any financial records including bank statements, checks, check registers, bills, and credit card statements. The court finds the testimony of the plaintiff regarding these financial records is simply not credible.
The court finds that the adulterous conduct of the defendant is CT Page 4540 a substantial contributing cause of the breakdown of the marriage.
After taking into consideration all of the required statutory criteria, including but not limited to those set forth in §46b-62, § 46b-81 and § 46b-82, and applying the same to the evidence, the court enters the following orders:
1. A decree is entered dissolving the marriage of the parties on the grounds of an irretrievable breakdown, all the allegations of the complaint and cross-complaint having been proven true.
2. The parties are awarded joint legal custody of the minor child, Amy Michelle. The primary residence of the child shall be with the plaintiff-mother who shall be the custodial parent. The defendant father shall have reasonable rights of visitation with the child.
3. Pursuant to the child support guidelines, the defendant shall pay child support for the minor child, by means of an immediate wage execution, the amount of $150 per week until the child graduates from high school or reaches the age of nineteen, whichever occurs sooner. The parents shall share all unreimbursed medical and dental expenses for the minor child with the father being responsible for 58% and the mother 42% of such unreimbursed costs.
4. The defendant father shall provide health insurance for the minor child for so long as he is obligated to pay child support. In the event the father is no longer able to provide such health insurance through his employer, and if the mother is also unable to provide such health insurance through her employer, the parents shall apply for health care for the child through the State of Connecticut HUSKY plan, or a similar program.
5. The defendant shall obtain and pay for the plaintiffs health care through COBRA for one full year from the date of this judgement.
6. Beginning with the tax year 2000, the defendant shall be entitled to claim the minor child for federal tax purposes for as long as he is obligated to pay child support and provided he is current in his child support payments.
7. The defendant shall pay alimony to the plaintiff in the amount CT Page 4541 of $150 per week. This alimony shall terminate upon the death of either party, the remarriage of the plaintiff, or when the plaintiff reaches the age at which she qualifies for full social security benefits. Because the plaintiff will need time to acquire the job skills she will need in order to compete in the workforce and adequately support herself, the court orders that this alimony award be nonmodifiable for five years. Thereafter the alimony may be modified as to amount in the event of a substantial change of circumstances.
8. In order to protect the financial interests of the plaintiffs alimony award and child support ordered for the minor child in the unfortunate event of the defendant's death, the defendant shall maintain $10,000 of life insurance coverage on his life with his daughter, Amy, as sole beneficiary for as long as he is obligated to pay child support. Additionally, the defendant shall maintain $50,000 of life insurance coverage on his life with the plaintiff as sole beneficiary for ten years from the date of this judgement. The court notes that the defendant's financial affidavit reflects current insurance on his life in the amount of $225,000. The defendant testified that he does not have to contribute to the cost of this life insurance.
9. The defendant shall transfer 50% of his National Guard pension, with a stipulated value of $30,000, to the plaintiff by Qualified Domestic Relations Order. The plaintiff shall transfer 30% of his regular employment pension to the plaintiff by Qualified Domestic Relations Order. The plaintiff shall retain her 401(k) fund.
10. Each party shall be solely responsible for the debts and liabilities shown on their respective March 23, 2000 financial affidavits, as amended, except that the plaintiff shall be solely responsible for the current mortgages on the marital home as otherwise ordered herein.
11. The defendant shall contribute $1500 toward the cost of the plaintiffs attorney fees within 60 days of this judgement.
12. The defendant shall quit claim the marital home located at 5 Pioneer Drive, Ellington, Connecticut to the plaintiff The plaintiff shall be solely responsible, and shall hold the defendant harmless, for the payment of the first and second mortgages on the property with loan balances of approximately $30,000 and $28,000 respectively, as well as any taxes or other CT Page 4542 encumbrances on said property.
13. The plaintiff is awarded the 1999 Ford Escort. The defendant is awarded the Nissan Altima, the Jeep Comanche, the Mercedes, and the motor cycle. The parties shall, where necessary, transfer titles to the motor vehicles within 30 days. Each party shall hold the other harmless for any debt and taxes owed on the motor vehicle(s) awarded to them.
14. Within 30 days the plaintiff shall transfer to the defendant the following items of property listed in defense exhibit #4: the generator set, snow blower, and the parts for same; one T.V. set; one VCR; the router table; sympathy cards; family photographs; two carved pictures; framed picture of Christ; the exercise bike; the ski equipment.
15. Counsel for the plaintiff is ordered to prepare and submit to the court a judgement file, signed by both attorneys, within 30 days of the date of this judgement.
Terence A. Sullivan, Superior Court Judge